**CITY OF LITTLETON, COLORADO, et al., Plaintiffs,**

v.

**COMMERCIAL UNION ASSURANCE COMPANIES, et al., Defendants.**

No. 89–C–859.

United States District Court, D. Colorado.

Nov. 21, 1990.

Larry Berkowitz, William Brady, Denver, Colo., for City of Littleton.

John R. Olsen, Denver, Colo., for City of Englewood.

James K. Green, Peter S. Dusbabek, Montgomery, Green, Jarvis, Kolodny & Markuson, Denver, Colo., Crane & Leake, P.C., Robert E. Crane, James A. Casey, Durango, Colo., Richard W. Laugesen, Anderson, Campbell & Laugesen, P.C., Denver, Colo., Thomas L. Roberts, Joanne Zboyan, Pryor, Carney & Johnson, P.C., Englewood, Colo., John M. Kobayashi, Kobayashi & Associates, Denver, Colo., Michael L. O'Donnell, Robert R. Carlson, White and Steele, P.C., Denver, Colo., Paul M. Strohfus, Strohfus & Cook, Denver, Colo., Jeffery Kaufman, W. Martin Tellegen, Kaufman & Logan, San Francisco, Cal., Irene A. Sullivan, William J. Wright, Jr., Arthur F. Fama, Jr., Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants.

### MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiffs, the cities of Littleton and Englewood, Colorado, commenced this suit seeking, among other things, a declaratory judgment regarding insurance coverage for potential hazardous waste cleanup liability. Defendants are insurance companies that have insured the plaintiffs. Currently pending is the defendant Commercial Union

Assurance Company's ("CUA") motion to dismiss pursuant to Fed.R.Civ.P. 19. Defendants Granite State Insurance Company ("Granite State") and American Excess Insurance Company ("AmEx") have joined in CUA's motion to dismiss. Plaintiffs have responded by opposing the motion.

The parties have briefed the issues and oral argument would not materially facilitate the decision process. Jurisdiction is alleged to exist pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND.

In 1973, the plaintiffs entered an agreement to treat both cities' waste water at one treatment facility, the "Bi–City plant." The plant began operation in 1977. Its waste was sent to the Lowry Landfill from 1977 through 1980.

In 1988, the Environmental Protection Agency ("EPA") advised the plaintiffs that they were potentially liable for remediation costs and other damages pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.* The EPA asserted that Bi–City plant waste deposited at the Lowry Landfill constituted hazardous substances, and that these substances had migrated through ground water and potentially could migrate in the future.

Both plaintiffs carried insurance with several insurance companies during the alleged hazardous waste generation and migration periods. Many of the policies overlap. Primary policies were issued to cover both the Bi–City plant and the plaintiffs. Separate primary policies that the plaintiffs allege also cover the Bi–City plant were issued to each city. All of these primary policies contain "other insurance" clauses intended to determine the relative liability of each insurance company when more than one company's policy covers the same loss. In addition, several carriers, all named as defendants, issued excess insurance covering losses exceeding primary policy limits.

Upon EPA notification of potential liability, the plaintiffs demanded coverage and a legal defense from each primary insurer. Each insurer denied both coverage and defense. Plaintiffs then filed this suit seeking: (1) a declaration that the defendants' insurance policies provide coverage to their liability limits for the damages allegedly inflicted on the Lowry Landfill; (2) a specific performance decree requiring the defendants to provide each plaintiff a legal defense against the EPA's claims; and, (3) a declaration that the defendants breached their insurance contracts by failing to concede coverage or provide legal defense. Plaintiffs also seek indemnification of legal expenses already incurred and a decree declaring the defendants liable for all future legal and hazardous waste remediation expenses.

Plaintiffs have not included in this suit two Colorado corporations, the Colorado Intergovernmental Risk Sharing Agency ("CIRSA") and Guaranty National Insurance Company ("GN"). Both of these insurers had issued primary policies to the plaintiffs during the alleged hazardous waste generation or migration periods.[1] All parties and non-parties are subject to Colorado state court jurisdiction.[2] Defendants CUA, a primary carrier, and Granite State and AmEx, both excess insurers, have moved to dismiss the complaint, alleging that the absent Colorado insurers are indispensable parties within the meaning of Fed.R.Civ.P. 19.

## II.  ANALYSIS.

I have read the parties' briefs and have fully considered their arguments. Diversity jurisdiction would be destroyed if, as the defendants urge, I determine that GN and CIRSA are indispensable parties. Plain-

---

1. Defendants Granite State and AmEx allege that CIRSA also provided excess coverage for the plaintiffs. (Defendant's joinder in motion to dismiss, p. 2.)

2. All of the defendants are subject to service and Colorado state court jurisdiction because they issued insurance policies within the state. (*See* Amended complaint for declaratory judgment, ¶ 21, p. 5.) GN and CIRSA are Colorado corporations.

tiffs argue that GN and CIRSA are not indispensable but, rather, merely permissive parties who could be joined by the defendants without destroying diversity.

Fed.R.Civ.P. 19 provides the analytic framework for my decision through its two-part test for determining whether a party is indispensable. *Francis Oil & Gas, Inc. v. Exxon Corp.*, 661 F.2d 873 (10th Cir.1981). First, Rule 19(a) is applied to determine whether the absent party is conditionally necessary and therefore to be joined if feasible. Second, if joinder of that party would destroy diversity jurisdiction, Rule 19(b) is invoked to determine whether, in equity and good conscience, the action should be dismissed because that party is indispensable.

### A. Rule 19(a) Analysis.

Rule 19(a) provides three separate criteria for determining conditional necessity. First, Rule 19(a)(1) inquires whether, in the non-party's absence, complete relief can be accorded among those already parties. Next, Rule 19(a)(2)(i) asks whether the absent party claims an interest in the action and whether its absence, as a practical matter, may impair or impede its ability to protect that interest. Finally, Rule 19(a)(2)(ii) asks whether disposition of the action may subject those already parties "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Existence of such a risk warrants a finding that the non-party is conditionally necessary. *Francis Oil*, 661 F.2d at 877; *State Farm Mut. Auto. Ins. Co. v. Mid–Continent Cas. Co.*, 518 F.2d 292, 295 (10th Cir.1975).

As to Rule 19(a)(1), the defendants assert that complete relief cannot be accorded: first, because of the "other insurance" contract provisions, and second, because excess insurance contracts may ap-

ply. The mere presence of "other insurance" terms in contested insurance contracts does not compel a finding that absent insurers are conditionally necessary parties. *Brinco Mining Ltd. v. Federal Ins. Co.*, 552 F.Supp. 1233, 1238–39 (D.D.C. 1982). Courts, however, have reached disparate conclusions on the question whether interdependency of insurers' liability via "other insurance" clauses renders absent insurers necessary parties. *Compare Brinco*, 552 F.Supp. at 1239 (no necessity despite other insurance clauses), *with Evergreen Park N. & C. Home, Inc. v. American Eq. Assur. Co.*, 417 F.2d 1113 (7th Cir.1969) (absent insurers subject to "other insurance" clauses indispensable).

In every case where "other insurance" clauses may apply, the nature of the relief sought naturally effects a necessity determination.[3] Here each insurance contract creates a separate obligation. Interdependency of the present and absent insurers' contracts exists only to the extent that the degree of ultimate liability is dependent on every other contract. The relief requested[4] would require an interpretation of the insurance contracts, including the "other insurance" clauses. It would not require, however, application of the "other insurance" clauses because the plaintiffs do not seek a declaration on the proration of ultimate liability. Thus, each named defendant's insurance contract can be construed separately to determine whether and to what extent there is coverage under that contract.[5] Therefore, I conclude that complete relief can be accorded among the plaintiffs and the defendant primary insurers without joinder of the non-parties.

The same result does not follow, however, with respect to the excess insurers, defendants Granite State and AmEx.

---

**3.** For example, an absent party's necessity in a suit seeking only a declaration of insurance coverage is clearly less than that of an absent party in a suit to apportion ultimate liability pursuant to "other insurance" clauses.

**4.** As previously noted, the plaintiffs here seek a declaration of coverage liability, of the extent of that liability and that the named defendants are

liable for all future legal defense and CERCLA-related costs that may accrue.

**5.** Of course, the final monetary extent of each insurer's liability exposure cannot be determined until the EPA asserts a claim for remediation costs and damages.

Plaintiffs seek a declaration of these insurers' coverage and its extent. Defendant AmEx's coverage, however, is explicitly stated to be in excess of absent insurer GN's policy and of any other primary insurance policies. (*See* defendants' joinder in motion to dismiss, Exhibit A.) AmEx's liability is thus dependent on the determination whether the primary insurers' policies, including those of GN and CIRSA, provide coverage. In addition, AmEx's "ultimate net loss" provision, while providing defense cost coverage, is not triggered until the obligations of all primary insurers have been determined. Further, the plaintiff Littleton purportedly breaches a contract provision by failing to proceed against all primary carriers. Granite State's policy similarly conditions coverage. (*See* Defendants' joinder in motion to dismiss, Exhibit B.)

Under these circumstances, complete relief cannot be accorded among the plaintiffs and the excess insurers. In a declaratory judgment action, all interested parties should be joined and judgment should not be entered unless it disposes of a controversy and serves a useful purpose. *State Farm*, 518 F.2d at 296; *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1275–76 (10th Cir.1989). Declaratory judgment here would promote neither end. Although I could construe the absent insurers' policies, any declaration on GN and CISRA's liability would not bind them, the plaintiffs

or the named defendants. Thus, the finality of any judgment as to the excess insurers' liability would be entirely contingent on judgment in a necessary, parallel state court suit between the plaintiffs and the absent insurers. The present defendants likely would be joined in that suit in which issues identical to those presented here would be considered. In a Rule 19(a)(1) inquiry, I must consider the public's interest in avoiding repeated lawsuits on the same subject matter.[6] *See* Notes of the Advisory Committee, Rule 19(a)(1); *Evergreen*, 417 F.2d at 1115. No useful purpose would be served by a partial judgment when there is a substantial risk of duplicative litigation. Further, the plaintiffs' assertion that the absent insurers could be joined in this suit via third-party practice is erroneous.[7]

Accordingly, I find and conclude that the absent insurers are conditionally necessary parties to be joined if feasible pursuant to Rule 19(a)(1).[8] In light of this conclusion, I need not consider whether the absent parties are conditionally necessary under Rule 19(a)(2).

### B. Rule 19(b) Analysis.

■ Because joining the absent parties would destroy diversity jurisdiction, I must proceed to Rule 19(b) to consider whether in equity and good conscience this suit should be dismissed on the ground that the

---

**6.** Further, it is unclear whether the issue of the excess insurers' liability is ripe for adjudication prior to a determination of the primary insurers' obligations. *See Zaborac v. American Cas. Co.*, 663 F.Supp. 330 (C.D.Ill.1987).

**7.** Plaintiffs seek, in part, a declaration of the extent of insurance coverage. Even if GN and CIRSA could be impleaded pursuant to Fed.R.Civ.P. 14, the plaintiffs could assert no claim for coverage against them because to do so would destroy diversity jurisdiction. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (federal court lacks subject matter jurisdiction over claim by plaintiff against non-diverse third-party defendant). Without this claim before me, I cannot decide either GN and CIRSA's liability or, consequently, the extent of the excess insurers' obligations. The inability of the court to decide these issues is precisely what the defendants allege makes GN and CIRSA indispensable parties.

**8.** The holding in *Brinco* is not inapposite. That court recognized the force of the indispensability argument when applied to excess insurance, but discounted it because the plaintiffs there sought coverage principally under primary policies and were mainly interested in obtaining legal defense. *Brinco*, 552 F.Supp. at 1238–39. In contrast, the plaintiffs here have failed to name two primary insurance carriers and seek maximum coverage from the named excess insurers. These two primary carriers insured the plaintiffs during a substantial portion of the alleged waste generation and migration period. Accordingly, this opinion should not be construed as bestowing indispensability on absent insurers whenever excess insurance contracts may apply, but must be confined to the precise facts here presented.

absent parties are indispensable. Rule 19(b) sets out four factors to be considered in determining indispensability:

"[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

Rule 19(b) determinations must be based on fact-specific considerations. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119, 88 S.Ct. 733, 743, 19 L.Ed.2d 936 (1968). The four factors comprising the standard are to be applied in a practical, pragmatic and equitable manner. *Id.; Francis Oil*, 661 F.2d at 878.

### 1. Rule 19(b), Factor One

Factor One: To what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties.

Factor one directs the court's attention to interests of both present and absent parties and, thus, is related to the Rule 19(a)(2)(i) and (ii) inquiries. 3A Moore's Federal Practice ¶ 19.07–2[1] (1989). Here, the potential prejudice to those already parties is of concern. The prospect of subsequent litigation that might produce inconsistent obligations raises the specter of prejudice. Inconsistent obligations are created when two courts issue orders and compliance with one would cause a breach of the other. *Micheel v. Haralson*, 586

F.Supp. 169, 171 (E.D.Pa.1983). To determine excess coverage liability here, I would have to consider whether an "occurrence" has happened, what "triggers" coverage and, therefore, during what periods of time coverage is enforceable, and what constitutes "damages" within the meaning of each contract. This court and a state court would not be unlikely to reach different conclusions on these matters, thus leaving some parties subject to conflicting orders.[9]

The absent insurers also may be prejudiced. In ordinary circumstances a party does not become indispensable in a contract action simply because its rights under a separate contract will be affected by a judgment in its absence. *Francis Oil*, 661 F.2d at 878. As noted, no decision of this court could bind the absent insurers. The absence of prejudice in a technical sense, however, does not end the inquiry. *Provident Tradesmens Bank*, 390 U.S. at 110, 88 S.Ct. at 738. The test is whether as a practical matter an absent party may be prejudiced. *Id.*

Practical prejudice may arise here. If, for example, this court should conclude that the absent insurers are bound to provide coverage, a state court may be inclined to reach a similar conclusion.[10] Determination of coverage liability will be based on fact-specific inquiries inextricably related to each individual insurer's contract terms and contracting period. While the absent insurers' interests may be represented by the defendants in part,[11] their absence could deny them the opportunity to present their individual defenses at a meaningful time, *e.g.*, when the issues are first litigated.

---

**9.** For example, the excess insurers could be held responsible for coverage if this court determines GN's and CIRSA's provide coverage. If, however, a state court should decide differently on primary liability, that is, that the extent of GN or CIRSA's liability either was greater or less than that decided here, the excess insurers would be subject to conflicting obligations. A conflict in orders is a substantial likelihood, not a mere theoretical possibility, given complexity of the coverage determination.

The same issue arises with the duty to defend. One party could be held primarily liable in this court, another in state court. Resolution of these issues in one forum is preferable.

**10.** While this court's decision would not be binding precedent, a state court may wish to avoid a conflict in judgments.

**11.** These interests adequately could be represented only to the extent that the present and absent insurers' contracts and coverage periods are identical.

Alternatively, the judgments of this court and a state court could conflict. Thus, for example, this court could hold that no defendant insurer is liable. Still subject to suit, the non-parties could be held liable in a subsequent state court action. Avoiding piecemeal litigation, however, and the possibility of two interpretations of the same or similar policy language that possibly could leave the insureds with insufficient coverage after years of paying premiums is critical. *Lumbermens Mut. Cas. Co. v. Connecticut Bank and Trust Co.*, 806 F.2d 411, 414 (2d Cir.1986).

Deciding defense cost liability in the non-parties' absence is an additional concern. GN and, in particular, CIRSA both insured the plaintiffs during a significant proportion of the alleged waste generation period. (*See* Plaintiffs' amended complaint for declaratory judgment, p. 2–5.) Either CIRSA or GN well may be primarily liable for the plaintiffs' legal defense. Defendants have no motivation to protect these parties from such a finding.[12] For these reasons, I conclude that GN and CIRSA could be prejudiced by litigation in which their liability is not decided consistently with that of all other defendants.

### 2. Rule 19(b), Factor Two

Factor Two: The extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided.

Relief could be shaped by initially construing the excess insurers' policies but withholding final judgment until GN and CISRA's coverage and defense liability are determined in state court. This solution,

however, would not promote judicial efficiency, economy or the courts' or parties' convenience and would unnecessarily invite complexity, delay and a needless increase of litigation costs. No other reasonable alternative is obvious and the plaintiffs have suggested none.[13]

Other measures are similarly ineffective. If the absent parties are indispensable, intervention, even of right, would destroy diversity. *See, e.g., Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1017 (8th Cir.1984); 3A Moore's Federal Practice ¶ 24.18[3]. Although the absent parties, if merely necessary, have an arguable right to intervene, *Miller v. Miller*, 406 F.2d 590 (10th Cir.1969), the likelihood of intervention seems slight.[14] Further, pendent party jurisdiction does not extend to the absent insurers. *See Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).

### 3. Rule 19(b), Factor Three

Factor Three: Whether a judgment rendered in the person's absence will be adequate.

I already have determined that complete relief cannot be accorded among the parties. The propriety of rendering judgment in these circumstances is questionable. This is particularly so because of both the possible prejudice that may arise if jurisdiction is retained and the inability to shape relief adequately. This entire matter can be litigated in a state court that could provide a comprehensive remedy. The advantages of complete relief in a single forum outweigh any slight duplication of time and effort already spent in this matter by the parties and this court.[15]

---

**12.** Even if GN and CIRSA could seek contribution or indemnification for these costs, they may be required to enforce their rights in state court, which again raises the possibility of duplicative litigation. Moreover, it is possible that a determination here that the defendants have no defense cost liability could bar the absent insurers from seeking contribution.

**13.** Plaintiffs maintain impleader would address the concerns raised. (*See* Englewood's opposition to motion to dismiss, p. 22.) As explained, this is not a viable alternative.

**14.** The absent parties have no substantial impetus to defend a claim that has not yet been asserted against them. It is only on an assertion of a defense that permissive intervention could be possible here. *See* Fed.R.Civ.P. 24(b). Further, the absent parties must be aware of the possibility that allowing the time limitations in their contracts, if any, to run will bar the plaintiffs' claims against them.

**15.** This suit is presently in the initial discovery stage.

#### 4. Rule 19(b), Factor Four

Factor Four: Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

This factor impacts not only the parties' interests but those of the courts and the public in complete, consistent and efficient settlement of controversies. *Provident Tradesmens Bank*, 390 U.S. at 111, 88 S.Ct. at 738. It refers to the public stake in settling disputes in full whenever possible. *Id.* This factor is perhaps the most significant of the four in that it involves the courts' responsibility to discourage duplicative and piecemeal litigation. *See Travelers Indemnity Co. v. Monsanto Co.,* 692 F.Supp. 90, 92 (D.Conn.1988) (discouraging duplicative litigation is dispositive factor in decision whether to stay declaratory judgment action); *see also Lumbermens,* 806 F.2d at 414 (avoidance of piecemeal litigation given great weight in declaratory judgment actions because of complication and fragmentation of trial and inevitable friction between state and federal court). The interests of all concerned—the parties, public and courts—would be furthered by litigation in a single forum.

I recognize the plaintiffs' interest in litigating their claims in the forum of their choice. Plaintiffs allege that their claim against CUA may be barred by a contractual time limitation if this case is dismissed. It is entirely likely, however, that Colorado's savings statute will prevail over the policy limitation provision.[16] Further, the statutes of limitation, if any, are running on the GN and CIRSA policies. Failure promptly to sue these parties potentially could cause the plaintiffs to forfeit insurance coverage of greater value than CUA's, or, at least, constitute a breach of AmEx's policy with plaintiff Littleton. While I am not unconcerned about their dilemma, the plaintiffs, who themselves chose both the forum and the parties defendant, should not be heard to complain about the sufficiency of the relief obtainable. *See Provident Tradesmens Bank,*

390 U.S. at 111, 88 S.Ct. at 738. The clear and numerous advantages of state court adjudication outweigh the theoretical possibility that the plaintiffs' recovery may be reduced by dismissal.

### III. CONCLUSION.

For the above reasons, I find and conclude that the absent insurers, GN and AmEx, are parties conditionally necessary to this suit. I further find and conclude that in equity and good conscience these parties are indispensable and, therefore, that this suit must be dismissed.

Accordingly, IT IS ORDERED that:

(1) the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 19 is granted.

(2) the plaintiffs' complaint and action are dismissed without prejudice.

---

**16.** While no Colorado court appears to have ruled on the precise issue presented, the savings statute specifically applies to actions first com-

menced in federal court that involuntarily were dismissed for lack of jurisdiction. *See* Colo. Rev.Stat. § 13–80–111 (1987).