**SHELL OIL COMPANY, a Delaware Corporation, Plaintiff,**

v.

**AETNA CASUALTY AND SURETY COMPANY, et al., Defendants.**

No. 93 C 5168.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 4, 1994.

Opinion Denying Motions to Amend
Complaint or Reconsider Decision
Oct. 19, 1994.

Brian Douglas Sieve, Leonard A. Gail, S. Jonathan Silverman, Kirkland & Ellis, and Philip Scott Beck, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, for plaintiff.

Maryann C. Hayes, Mary E. Gootjes, Bates, Meckler, Bulger & Tilson; Robert A. Chaney, D. Timothy McVey, Purcell & Wardrope, Chtd.; Karen June Golden, Anthony Katauskas, Williams & Montgomery; Vincent S. Ziccolella, John S. Lindemann, Gleason, McGuire & Shreffler; Mark Stephen Grotefeld, Thomas Bernard Keegan, Charles Lincoln Philbrick, Robins, Kaplan, Miller & Ciresi; Daniel Richard Formeller, Michael John Duffy, Shaun McParland Baldwin, Kathryn Christine Thomas, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, Jeffrey N. Haney, Bishop, Barry, Howe, Haney & Ryder; Mark J. Seplak, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, Darin W. Snyder, Martin S. Checov, O'Melveny & Myers, San Francisco, CA, Linda Ann Weaver, Philip Reed Kujawa, Thomas M. Crisham, Michael Cleary Bruck, Hinshaw & Culbertson, Chicago, IL, William C. Wilka, Gordon & Rees, San Francisco, CA, Victor J. Piekarski, Daryl Gene Fryxell, Querrey & Harrow, Ltd., Chicago, IL, Margaret H. Warner, Bridget L. Kyle, Bruce K. Trauben, Carr, Goodson & Lee, P.C., Washington, DC, Larry S. Kaplan, Neal Jeffrey Moglin, Adler, Kaplan & Begy, Chicago, IL, Sandra Wallace, David C. Linder, Mark C. Kareken, Zelle & Larson, Minneapolis, MN, Arthur J. Liederman, Susan G. Duncan, Standard, Weisberg, P.C., New York City, Robert Joseph Kopka, Ralph A. Youngs, Creed T. Tucker, Landau, Omahana & Kopka, Ltd.; Andrew K. Miller, Rivkin, Radler & Kremer, Chicago, IL, Stephen J. Smirti, William M. Savino, Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, NY, Francis P. Cuisinier, Stephen J. Tasch, Law Offices of Shelmerdeane A. Miller; Susan M. Hyser, Matthew J. Fink, Jeffrey Alan Goldwater, Edward F. Ruberry, Bollinger, Ruberry and

Garvey; Michael J. Merlo, Karen Lundy Douglas, Mary K. McGahey, Merlo, Kanofsky, Brinkmeier & Douglas, Ltd.; Patrick Martin Ouimet, Wolf & Ouimet, Chicago, IL, Michael D. Gallagher, Christine L. Davis, Thomas M. Going, German, Gallagher & Murtaugh, Philadelphia, PA, John B. Haarlow, Michael P. Comiskey, Lord, Bissell & Brook, Chicago, IL, and Barry L. Bunshoft, Philip R. Matthews, Vito C. Peraino, and Paul J. Killion, Hancock, Rothert & Bunshoft, San Francisco, CA, for defendants.

## MEMORANDUM, OPINION AND ORDER

ANDERSEN, District Judge.

This case is before the court on the motion of defendants Aetna Casualty and Surety Company, AIU Insurance Company, Allianz Underwriters Insurance Company, Allstate Insurance Company, Arkwright Mutual Insurance Company, Azzacurazioni Generali Trieste, Birmingham Fire Insurance Company, Employers Mutual Casualty Company, Fireman's Fund Insurance Company, Granite State Insurance Company, Hartford Accident and Indemnity Company, Insurance Company of the State of Pennsylvania, Landmark Insurance Company, National Surety Corporation, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and Transamerica Premier Insurance Company to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join indispensable parties. For the following reasons, we grant defendants' motions.

## BACKGROUND

On August 24, 1993, Shell Oil Company ("Shell") filed this declaratory judgment action based on diversity jurisdiction. Its one-count complaint alleges that the defendants issued primary and excess Comprehensive General Liability ("CGL") policies to Shell. Shell manufactures polybutylene resin which is extruded by other companies into tubing for use in plumbing and municipal water systems. Shell alleges that some of the plumbing and water systems installed from December 1, 1977 through June 30, 1985 have failed. Shell further alleges that it has spent millions of dollars in damages, settlement, legal fees and loss mitigation for these failures.

In this case, Shell seeks a declaration that its liability insurers whose policies were in force when these systems were installed must indemnify Shell for amounts it has paid or may pay for claims arising from failures of the polybutylene piping systems. Defendants seek to dismiss the complaint for failure to join indispensable parties under Fed.R.Civ.P. 19.

Shell purchased primary CGL insurance covering the first several million dollars in claims, as well as several layers of excess or umbrella insurance. After the primary layer is exhausted, the first excess layer kicks in. After that layer is exhausted, the second excess layer kicks in, and so on. For each policy year between 1977 and 1985, Shell maintained excess insurance for at least $100 million in claims.

Shell did not sue eight non-diverse insurance companies that issued excess policies to Shell during the time period at issue. Those unnamed carriers are First State Insurance Company, Lexington Insurance Company, Prudential Reinsurance, American Re–Insurance, Highlands Insurance Company, Gibraltar, American Excess and Republic. It is undisputed that Shell's reason for this non-joinder was because their joinder would destroy diversity and eliminate a tactical advantage that Shell perceived based on the Seventh Circuit's ruling in *Eljer Manufacturing, Inc. v. Liberty Mutual Ins. Co.*, 972 F.2d 805 (7th Cir.1992), *rev'g* 773 F.Supp. 1102 (N.D.Ill.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 1646, 123 L.Ed.2d 267 (1993).[1]

Some of the policies issued by the omitted insurers underlie excess policies issued by some of the named defendants. Some of the policies issued by the omitted insurers share

---

1. Most of the unnamed insurers are corporations organized and existing under the laws of Delaware. The plaintiff, Shell, is a corporation organized and existing under the laws of Delaware. Since the plaintiff and the absent insurance companies are all Delaware corporations their joinder would destroy diversity. Fed.R.Civ.P. 19(b); *Burger King Corp. v. American Nat'l Bank & Trust Co.*, 119 F.R.D. 672 (N.D.Ill.1988).

layers of coverage with excess policies issued by some of the named defendants. In other words, the omitted insurers are either in the same layer or below the layer of coverage of the named defendants.

## DISCUSSION

■ In considering a motion to dismiss, the court must accept as true all the well-pleaded material facts in the complaint and must draw all reasonable inferences from those facts in the light most favorable to the plaintiff. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). The court is not, however, bound by the plaintiff's legal characterization of the facts. *Gomez v. Illinois State Bd. of Education*, 811 F.2d 1030, 1039 (7th Cir.1987).

■ Rule 19 establishes a two-step inquiry to determine whether it is proper to dismiss an action if it is not feasible to join an interested person. *Burger King Corp. v. American National Bank & Trust Co.*, 119 F.R.D. 672, 674 (N.D.Ill.1988), *citing, Hansen v. Peoples Bank of Bloomington*, 594 F.2d 1149, 1150 (7th Cir.1979). Rule 19(a) lists the criteria for determining whether an absent party should be joined if feasible. When the joinder of the absent party would destroy diversity jurisdiction, however, Rule 19(a) is inapplicable. *Pasco Intern. (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 500 (7th Cir.1980); *Bio–Analytical Services, Inc. v. Edgewater Hospital, Inc.*, 565 F.2d 450, 452 (7th Cir.1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). If the plaintiff cannot join an absent party who should be joined if feasible under Rule 19(a),[2] the court must then determine under Rule 19(b) whether, in equity and good conscience, the action should proceed among the parties before it or should be dismissed because the absent person is indispensable. *See, e.g., Krueger v. Cartwright*, 996 F.2d 928, 932 (7th Cir.1993); *Pasco*, 637 F.2d at 500.

In this case, defendants argue that there are at least eight omitted insurance companies that are both necessary and indispensable to this litigation. Defendants claim that the absent insurers are "indispensable parties" pursuant to Rule 19 because defendants' potential liability is dependent on a determination of a number of issues, including:

a. whether the underlying policies issued by the omitted insurers provide coverage for Shell's claimed losses;

b. what trigger of coverage is applied to the underlying policies issued by the omitted insurers;

c. whether the underlying policies issued by the omitted insurers are or will be exhausted;

d. whether the policies issued by the omitted insurers that share a layer with the named insurers' policies provide coverage for Shell's claimed losses;

e. whether the policies issued by the omitted insurers that share a layer with the named insurers' policies have the same trigger of coverage; and

f. whether the policies issued by the omitted insurers that share a layer with the named insurers' policies are or will be exhausted.

■ Because joinder of the omitted insurers would destroy diversity jurisdiction, defendants contend that Rule 19 requires dismissal of the suit. Defendants argue that complete relief cannot be accorded without the presence of the omitted parties because the court cannot properly allocate the defense or indemnity shares among the named parties. Shell argues that complete relief is possible because each of the insurance policies at issue is separate and, therefore, the court can declare each defendants' obligations under its own contract without the presence of the other insurance carriers.

### I. *Rule 19(b) Analysis*

Rule 19(b) lists four factors to assist the court in deciding whether necessary parties are so indispensable that the case cannot go

---

2. Shell does not argue that the omitted insurers are not persons to be joined if feasible under Rule 19(a). Accordingly, we assume, without deciding, that the omitted insurers are such absent persons under Rule 19(a).

forward in their absence. These factors include:

first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provision in the judgment, by the shaping of relief or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; forth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

### A. *Prejudice*

■ Under the first factor of Rule 19(b), the court weighs possible prejudice to the absent parties, as well as to the current parties. Although the omitted parties may not be "technically" bound by the court's ruling, this is not the critical inquiry under Rule 19(b). Rather, the test is whether as a practical matter an absent party may be prejudiced. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). As the Seventh Circuit has held, "Rule 19 requires us to look beyond whether a non-party would technically be bound and to consider whether the judgment would 'as a practical matter' impair the non-party's interests." *Casualty Indemnity Exchange v. Village of Crete*, 731 F.2d 457, 461 (7th Cir.1984).

In this case, the upper level excess carriers are seeking dismissal under Rule 19(b) because Shell failed to join insurance companies whose policies must be exhausted before the named insurers' policies "kick in." This is not a situation involving two primary insurers whose liability to the insured is wholly independent. In this case, the policy limits of the policies issued by the non-diverse carriers that were purposefully left out of the case by Shell must be exhausted before the obligations, if any, of the upper level excess carriers are triggered. Thus, in order to provide the declaratory relief Shell seeks from its excess carriers, this court must rule that the underlying absent carriers have paid or are liable to pay their policy limits because an excess policy does not kick in until all underlying policies are exhausted. To so rule, we would be required to interpret the terms, conditions, and exclusions contained in the policies of both the named and omitted carriers' policies.

While Shell argues that this court will not make any material rulings on the policies issued by the absent insurers, that is not true. We must necessarily rule that underlying carriers, whether absent or named, have paid or are liable to pay their policy limits before an upper level policy would owe coverage. Such a ruling would be both material and highly prejudicial to the interests of the absent carriers.

The most factually analogous case is *City of Littleton, Colo. v. Comm. Union Assur. Co.*, 133 F.R.D. 159 (D.Colo.1990). In *Littleton*, an unnamed insurance company ("GN") that issued a primary policy to the plaintiff insured was held to be an indispensable party vis-a-vis the defendant insurer ("AmEx"), which had issued an excess policy directly above the missing insurer's policy. Contrary to Shell's assertion, the fact that the missing carrier issued a primary policy to the plaintiff was not controlling—the controlling fact was that the named carrier's policy was directly *above* the unnamed carrier's policy:

Defendant AmEx's coverage, however, is explicitly stated to be in excess of the absent insurer [GN's] policy and of any other primary insurance policies. AmEx's liability is thus dependent on the determination whether the [missing] primary insurers' policies ... provide coverage. In addition, AmEx's "ultimate net loss" provision, while providing defense cost coverage, is not triggered until the obligations of all primary insurers have been determined.

*Littleton*, 133 F.R.D. at 163.

We find that the absent insurers may be prejudiced in future actions by this court's rulings on policy terms, coverage defenses, and most importantly, whether the underlying policies issued by those omitted carriers provide coverage. Should we decide that the absent carriers' policies provide coverage and that a certain trigger of coverage will apply to the absent insurers' policies, another court may be inclined to reach a similar conclusion

in order to avoid a conflict in judgments. *Littleton*, 133 F.R.D. at 164. While the underlying carriers, to the extent that they are not parties to this action, may not be precluded from relitigating the meaning of their own policies in state court, a state court may be inclined, albeit not required, to adopt an interpretation similar to that which this court decides is correct. The absent insurers, then, will have lost the opportunity to present their arguments regarding the interpretation of their policies at the time when they would be most forceful, i.e., when the interpretation of the contract terms was first litigated. *See Littleton*, 133 F.R.D. at 164. Therefore, we find that the omitted insurers would suffer prejudice as a result of a judgment tendered in their absence.

In addition to the disadvantages this case may create for the omitted insurance carriers, it also presents the potential for prejudice to the current defendants and even to the plaintiffs because subsequent litigation in state courts could lead to inconsistent obligations for the parties. For example, this court might determine that certain layers have been exhausted and, therefore, the defendants are obligated to defend Shell. If a state court should decide differently with respect to the omitted underlying carriers, that the underlying coverage is not applicable or has not been exhausted, the defendant insurers are effectively confronted with differing determinations regarding their liability. Ultimately, such conflicting determinations could leave Shell short of insurance coverage despite their payment of insurance premiums. *See Littleton*, 133 F.R.D. at 165. "The prospect of subsequent litigation that might produce inconsistent obligations raises the specter of prejudice" to the named parties to this action. *Id.* at 164. Moreover, a "conflict in orders is a substantial likelihood, not a mere theoretical possibility, given [the] complexity of the coverage determination.... Resolution of these issues in one forum is preferable." *Id.* at 164 n. 9. Because this action will not result in a meaningful determination of the insurers' rights and obligations, the named insurers and Shell could possibly be prejudiced if this action proceeds without the carriers who issued underlying policies.

### B. *Avoiding Prejudice by Shaping Relief*

Turning to the second factor, it does not appear that the potential prejudice can be alleviated short of joining the omitted insurance carriers. In interpreting the policies at issue, we cannot confine our analysis to policy years in which the absent insurers were not involved. Many of the named defendants issued excess level coverage contemporaneous with the absent insurers, as well as at different layers. Thus, we cannot shape the relief, particularly in the case of a declaratory judgment, in such a way to lessen or avoid prejudice. In *Littleton*, the court noted that one possibility might be to make an initial determination of the defendants' liability but withhold judgment until the parallel state court proceedings were completed. *Id.* at 165. We agree with the *Littleton* court's conclusion that this course of action would fall far short of an efficient use of judicial resources and would needlessly increase the parties' litigation expenses.

Shell argues that prejudice could be avoided if the defendants impleaded the omitted carriers as third party defendants. However, this argument lack merit. Like the plaintiffs in *Littleton*, Shell seeks a declaration of the extent of its insurance coverage. In *Littleton*, the court noted that impleading the omitted carriers would not bring the crucial question before it—the extent of the omitted carriers' coverage—because plaintiffs would remain unable to assert such a claim against the third party defendants. *Littleton*, 133 F.R.D. at 163 n. 7. *See also* 28 U.S.C. § 1367(b) ("the district courts shall not have supplemental jurisdiction over claims by plaintiffs against persons made parties under Rule 14 ... when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332").

For these reasons, we find that the prejudice cannot be alleviated short of joining the omitted insurance carriers.

### C. *Adequacy of Judgment in the Omitted Insurers' Absence*

▪ The third factor, whether a judgment in the omitted party's absence will be ade-

quate, concerns "the public interest in the complete and efficient resolution of controversies by the wholes." *Pasco,* 637 F.2d at 505. Complete relief cannot be accorded without joining the omitted insurers. As discussed above, a missing insurer that underlies or shares layers with the named defendants is indispensable because the named defendants' potential liability is dependent on a determination of a number of coverage, and policy limits issues.

■ Shell argues that this court will not enter a judgment "relative to the policies issued by non-parties." However, absent a ruling as to the omitted carriers' underlying policies, there can be no meaningful declaratory judgment as to the obligations of the named excess carriers whose policies kick in only upon exhaustion of the underlying coverage. Therefore, the most that Shell would gain in this action would be an advisory opinion. As noted by the district court in *Littleton:*

> Under these circumstances, complete relief cannot be accorded among the plaintiffs and the excess insurers. In a declaratory judgment action, all interested parties should be joined and judgment should not be entered unless it disposes of a controversy and serves a useful purpose ... The finality of any judgment as to the excess insurers' liability would be entirely contingent on judgment in a necessary parallel state court suit between the plaintiffs and the absent insurers.

*Littleton,* 133 F.R.D. at 163. Thus, without the absent insurers as parties, this court's judgment cannot adequately address all the concerns for the insurers, and thus, would forestall complete resolution of this controversy. As a result, any judgment rendered in the absence of the absent insurers would not be adequate.

D. *Adequacy of Remedy if Case is Dismissed*

■ Finally, the court must consider whether Shell will have access to an adequate forum if this case is dismissed. This factor implicates not only the parties' interests, but also those of the public in avoiding piecemeal litigation. *Provident Tradesmens,* 390 U.S.

at 111, 88 S.Ct. at 738–39. Although Shell is entitled to a high degree of respect for its choice of forum, under the circumstances of this case, its choice must give way to the countervailing interests of all involved in resolving this controversy completely, consistently and efficiently. *See Provident Tradesmens,* 390 U.S. at 111, 88 S.Ct. at 738–39.

■ The Seventh Circuit considers the availability or unavailability of an alternative forum a "critical consideration" under Rule 19(b). *Pasco,* 637 F.2d at 500. A unified state court action is the "adequate remedy" for Shell if this action is dismissed for nonjoinder under Rule 19(b). In this case, there are alternative forums where all the non-diverse insurers would be before the court. The alternative venues include California and Illinois state court. In fact, Shell has already sued all its excess insurers in California state court. Thus, there exists an alternative state court forum where Shell can seek a declaratory judgment that all of Shell's excess insurers are obligated to indemnify Shell for all amounts that Shell has paid or will pay for polybutylene claims. Moreover, this unified state court action will avoid duplicative litigation and inconsistent judgments and thus will promote judicial economy.

## CONCLUSION

For the foregoing reasons, we grant the motion of defendants Aetna Casualty and Surety Company, AIU Insurance Company, Allianz Underwriters Insurance Company, Allstate Insurance Company, Arkwright Mutual Insurance Company, Azzacurazioni Generali Trieste, Birmingham Fire Insurance Company, Employers Mutual Casualty Company, Fireman's Fund Insurance Company, Granite State Insurance Company, Hartford Accident and Indemnity Company, Insurance Company of the State of Pennsylvania, Landmark Insurance Company, National Surety Corporation, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and Transamerica Premier Insurance Company to dismiss plaintiff's complaint for failure to join indispensable parties. The absent insurers should be parties to this action in order to accord complete relief between Shell and

the named insurers. The advantage of resolving all the disputes over the polybutylene claims in a single forum outweighs any disadvantage Shell may suffer as a result of having spent time and effort in this court. Thus, consideration of Fed.R.Civ.P. 19 factors leads to the conclusion that the omitted insurance carriers are indispensable to this litigation. Therefore, this action is dismissed.

## MEMORANDUM, OPINION AND ORDER ON MOTIONS TO AMEND AND RECONSIDER

This case is before the court on the motion of Shell Oil Company ("Shell") to amend its complaint and to reconsider the court's decision of August 3, 1994. For the reasons stated below, we deny the motions to amend and reconsider.

### BACKGROUND

Shell filed its complaint on August 24, 1993. On May 17, 1994, this court informed the parties of its tentative decision to grant the motion to dismiss for failure to join indispensable parties filed by fifteen defendants. On May 23, 1994, Shell filed a motion for leave to file its first amended complaint. In the amended complaint, Shell waived and released all rights it has or may have for polybutylene claims under the July 1, 1977–June 30, 1985 policies issued by its nondiverse insurers, conditional on this court's denying the defendant insurers' indispensable parties, forum non conveniens, and stay motions.

On May 24, 1994, the court issued a minute order granting defendants' motion to dismiss for failure to join indispensable parties. On May 25, 1994, Shell moved this court to reconsider its order. On August 3, 1994, this court issued its Memorandum Opinion and Order dismissing the complaint under Rule 19 for failure to join indispensable parties. This court isolated two aspects of prejudice that warranted dismissal: first, that the omitted insurers would suffer prejudice as a result of a judgment tendered in their absence; and second, that subsequent litigation in state courts could lead to inconsistent obligations for the parties named in this action.

Shell claims that the amended complaint addresses and moots all of the prejudice this court found would be visited on either the unnamed insurers or the parties. Shell claims that its release ensures that there will be no subsequent state court litigation between Shell and the unnamed insurers. Shell also claims that the unnamed insurers cannot be prejudiced by decisions made in their absence in this court and that there will be no additional adjudications that might create inconsistent obligations relative to polybutylene for the parties involved in this action.

Shell presents two arguments in support of its motions to amend and for reconsideration. First, Shell argues that the release of the unnamed insurers moots the Rule 19 indispensable parties issues. Second, Shell argues that even if the waiver and release does not moot the Rule 19 issues, this court's August 3, 1994 Opinion is incorrectly decided as a matter of law and fact.

### DISCUSSION

#### I. Motion to Amend

The liberal amendment policy in Rule 15(a) does not require that a court engage in futile gestures. *Holloway v. Dobbs,* 715 F.2d 390, 392–93 (8th Cir.1983). A court may deny a motion to amend if amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In this case, granting Shell's motion to amend would be futile because Shell's proposed amendments do not cure the defects in its complaint. We granted the rule 19 motion on two grounds: prejudice to unnamed insurers and the potential for subsequent state court litigation which could lead to inconsistent obligations for the named parties. Shell's proposed amendment to its complaint cures neither of these defects.

In this case, we would be obligated to interpret the terms, conditions, and exclusions contained in the absent carriers' policies—with or without a waiver and release—because of the nature of excess insurance. In order to grant Shell the declaratory relief it seeks, we would have to rule that each and every policy provides coverage, whether is-

sued by an absent carrier or a named defendant. Shell's waiver and release means only that Shell conditionally promises to pay the policy limits of an absent carrier's policy, rather than seek payment from the absent carrier—after this Court has ruled that an absent carrier's policy provides coverage. Consequently, the same prejudice delineated in this court's Opinion will be present if this action goes forward without the unnamed carriers.

An identical argument was asserted by the plaintiff in *Witco Corp. v. Travelers Indemnity,* 93–4705, 1994 WL 706076 (D.N.J. April 7, 1994), *reconsideration denied,* (D.N.J. August 5, 1994). In *Witco,* the court held that there were two indispensable parties—one of which had issued a primary "fronting" policy and the other of which had issued an excess policy. Like this court, the *Witco* court relied upon *Littleton v. Commercial Union Assur. Co.,* 133 F.R.D. 159 (D.Col.1990) in reaching its conclusion that both absent carriers were indispensable under Rule 19.

In its motion for reconsideration, the plaintiff in *Witco* argued that the primary carrier, National Union, was not indispensable because the policyholder Witco actually bears the risk of loss under the National Union "fronting" policy. In the August 5, 1994 Opinion, the *Witco* court held that the absent carrier was an indispensable party based on the significance of the policy, regardless of who will ultimately bear the costs of liability. The *Witco* court reasoned that in order to determine liability under the excess policies, the court would have to first construe the absent carrier's underlying policy because the excess policies expressly premise liability on a determination of the underlying insurer's liability. That is, liability must attach to an underlying policy before liability could attach to an excess policy, regardless of whether the policyholder or the carrier will ultimately pay the policy limits.

The same reasoning applies to this case. The insurance policies issued by the absent carriers must be fully exhausted by indemnity payments in order to trigger each subsequent, or higher level, layer of coverage. Shell clearly is not rescinding or voiding the policies of insurance issued by the absent

carriers. In fact, the absent carriers already are defendants in two actions brought by Shell, which are pending in California state court. Thus, Shell is seeking coverage from the absent carriers, but in another forum.

Rulings in this action could prejudice the absent carriers because the policies to which they follow form would be subject to interpretation by this court and by the California state court. For example, this court's rulings regarding exhaustion of policy limits could conflict with state court rulings on the same issue. Similarly, rulings on substantive coverage issues and defenses may well conflict. Such inconsistent rulings will prejudice all insurers and inevitably result in additional litigation.

■ Shell argues that the unnamed companies will suffer no prejudice because they will not be bound by any judgment entered against the defendants. However, Rule 19 is not limited to circumstances where a person will be technically bound by a judgment. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968). Rather, the rule looks to whether a litigant's interests will be impaired in a practical sense if an action proceeds in the person's absence. In this case, many of defendants' insurance policies are "following form," meaning that their policies adopt many of the terms and conditions of the underlying policies. As a result, determination of coverage issues may well turn on this court's construction of the underlying policies.

Moreover, Shell's self-imposed obligations under its proposed waiver and release are vague, conditional and contingent. The proposed waiver and release is not only contingent upon this court denying the Rule 19 motions to dismiss, but also denying the forum non conveniens motions and the motion to stay. The waiver and release also is contingent upon a certain outcome of any and all appeals of this court's rulings on these various motions. Thus, the waiver and release could potentially be extinguished or withdrawn at any point during this litigation.

Although Shell asserts that there will be no subsequent state court litigation between

Shell and the unnamed insurers, this assurance is not reliable given the contingent nature of the proposed waiver and release. Moreover, the waiver and release could be construed to be invalid and unenforceable—for example, if a court found that the waiver and release lacked consideration.

In sum, the proposed waiver and release does not change our conclusion that the eight absent carriers are indispensable parties under Rule 19 because this court will be required to rule upon the absent carriers' policies. The proposed first amended complaint would result in an inefficient use of judicial resources, duplicative litigation and needless litigation expense to the parties.

II. *Motion to Reconsider*

In its motion for reconsideration, Shell first claims that this court ignored the Seventh Circuit precedent of *Casualty Indemnity Exchange v. Village of Crete*, 731 F.2d 457 (7th Cir.1984) in our earlier decision. However, we properly considered that decision as it was cited in all of the briefs, and we even cited that decision at page 400 of our opinion. *Casualty Indemnity* requires the court to consider whether judgment would "as a practical matter" impair the non-party's interest. *Id.* at 461. Our consideration of the facts in the instant case led to the proper conclusion that there could readily be prejudice to the absent carriers. Therefore, we have properly considered the *Casualty Indemnity* decision in making our ruling.

■ Shell next claims that our Opinion ignores the specific facts of this case. Rule 19 determinations must be based on fact specific considerations. In cases such as this, where the absent carriers' policies underlie the named defendants' policies, the absent carriers are held to be indispensable because of the nature of excess insurance coverage.

Shell's representation that none of the named policies expressly follow form to a missing carrier's policy does not alter the conclusion that the prejudice, the inability to issue meaningful relief, judicial inefficiency, and the adequacy of a state court forum all warrant dismissal. The bottom line is that the absent carriers' policies and the policies to which they follow form bottom line is that the absent carriers' policies and the policies to which they follow form necessarily will be interpreted and ruled upon if this action were to proceed without them. Without such rulings vis-a-vis the absent carriers' policies, this court would be issuing an impermissible advisory opinion. Shell's desire to litigate its polybutylene claims in this court does not outweigh the rule 19 concerns enumerated in this court's August 3, 1994 Opinion.

*CONCLUSION*

For the foregoing reasons, we deny Shell Oil Company's motion to amend its complaint and motion to reconsider our August 3, 1994 Opinion.