**FOR PUBLICATION**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Plaintiff-Appellant,

v.

PEABODY WESTERN COAL COMPANY,
Defendant-Appellee.

No. 02-17305

D.C. No.
CV-01-01050-MHM

OPINION

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued and Submitted
February 12, 2004--San Francisco, California

Submission Deferred February 13, 2004
Resubmitted March 3, 2005

Filed March 10, 2005

Before: Procter Hug, Jr., Arthur L. Alarcón, and
William A. Fletcher, Circuit Judges.

Opinion by Judge William A. Fletcher

3115

3116

3117

**COUNSEL**

Benjamin N. Gutman (Argued), EEOC, Washington, D.C.,
Ralph E. Chamness, Katherine Kruse, EEOC, Phoenix, Arizona, for the plaintiff-appellant.

Lawrence Jay Rosenfeld, Mary E. Bruno, John F. Lomax, Jr.,
Greenberg Traurig, Phoenix, Arizona, for the defendant-appellee.

---

3118

**OPINION**

W. FLETCHER, Circuit Judge:

The Equal Employment Opportunity Commission ("EEOC") filed this action against Peabody Western Coal Company ("Peabody") for maintaining a Navajo hiring preference at the mines that Peabody leases from the Navajo Nation. The EEOC alleges that Peabody has discriminated against non-Navajo Native Americans, including two members of the Hopi Nation and one member of the Otoe tribe, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

On appeal, we are presented with three questions. The first is whether, under Federal Rule of Civil Procedure 19, it is feasible to join the Navajo Nation as a party. We hold that it is feasible to join the Nation in order to effect complete relief between the parties. Because the EEOC is an agency of the United States, the Navajo Nation cannot assert its sovereign immunity as a defense to joinder. The second is whether the EEOC's claim presents a nonjusticiable political question. We hold that it does not. The third is whether the district court erred in dismissing the EEOC's claim that Peabody failed to keep records as required by Title VII, 42 U.S.C.§ 2000e-8(c). We hold that it did. We reverse and remand for further proceedings.

I. Background

Peabody mines coal at the Black Mesa Complex on the Navajo and Hopi reservations in northeastern Arizona. It does so pursuant to leases with the tribes entered into by Peabody's predecessor-in-interest, the Sentry Royal Company ("Sentry"). Sentry entered into two leases with the Navajo Nation: a 1964 lease allowing it to mine on the Navajo Nation's reservation (lease no. 8580), and a 1966 lease allowing it to mine on the Navajo portion of land set aside for joint use by the Navajo and Hopi Nations (lease no. 9910). Both

3119

leases contain provisions requiring that preference in employment be given to members of the Navajo Nation. The 1964 lease provides that Peabody "agrees to employ Navajo Indians when available in all positions for which, in the judgment of [Peabody], they are qualified," and that Peabody "shall make a special effort to work Navajo Indians into skilled, technical, and other higher jobs in connection with [Peabody's] operations under this lease." The 1966 lease contains a similar provision, but also specifies that Peabody may "at its option extend the benefits of this Article [containing the Navajo employment preference] to Hopi Indians." The record indicates that the language of the Navajo employment preferences remains unchanged and does not show that the preference has been extended to members of the Hopi Nation.

Pursuant to the Indian Mineral Leasing Act of 1938 ("IMLA"), the Department of Interior has approved both the leases, as well as subsequent amendments and extensions. See 25 U.S.C. §§ 396a, 396e; see also United States v. Navajo Nation, 537 U.S. 488, 493 (2003) (explaining that the Department of the Interior's approval is necessary before the leases become effective). If the lease terms are violated, the Navajo Nation and the Department of the Interior ("DOI") retain the power to cancel the leases after a notice and cure period.

In June 2001, the EEOC filed this action in District Court for the District of Arizona, alleging that Peabody was unlawfully discriminating on the basis of national origin by implementing the Navajo employment preference. Specifically, the EEOC's complaint charged that Peabody had refused to hire non-Navajo Native Americans -- two members of the Hopi and one now-deceased member of the Otoe tribe, as well as unspecified other non-Navajo Native Americans -- for positions for which they were otherwise qualified. The EEOC argued that such conduct violated 42 U.S.C. § 2000e-2(a)(1), which prohibits employers from refusing to hire applicants because of their national origin. The complaint further alleged

3120

that Peabody had violated the record-keeping requirements of § 2000e-8(c).

Questions arising out of transactions, including coal mining leases, on the Navajo and Hopi reservations and on the tribes' joint land have been extensively litigated. See, e.g., Navajo Nation, 537 U.S. at 493-513 (rejecting claim by Navajo Nation that the Secretary of the Interior breached fiduciary duties owed to the Nation by approving the coal leases); Peabody Coal Co. v. Navajo Nation, 373 F.3d 945, 946 (9th Cir. 2004) (holding that the court lacked jurisdiction to enforce arbitration settlement agreement about lease royalty rates); see also Clinton v. Babbitt, 180 F.3d 1081, 1083-86 (9th Cir. 1999) (describing the lengthy dispute between Navajo and Hopi Nations over joint use land in Arizona); Navajo Nation v. Peabody Holding Co., 209 F. Supp. 2d 269, 275-76 (D.D.C. 2002) (describing history of amendments to the leases in a RICO suit by the tribe against Peabody).

Navajo employment preference provisions also have been the subject of prior litigation. See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist., 276 F.3d 1150, 1163 (9th Cir. 2002) ("Dawavendewa II"); Dawavendewa v. Salt River Agr. Imp. & Power Dist., 154 F.3d 1117, 1124 (9th Cir. 1998) ("Dawavendewa I"). In Dawavendewa I, we interpreted the Indian preference exception of Title VII, § 2000e-2(i), to permit discrimination in favor of Indians living on or near a reservation, but not to permit discrimination against Indians belonging to other tribes. Id. at 1124. On remand to the district court, the private contractor defendant moved to dismiss the case for failure to join the Navajo Nation as an indispensable party under Federal Rule of Civil Procedure 19(b).

In Dawavendewa II, 276 F.3d at 1153, we agreed with the district court that the Navajo Nation was an indispensable party. We held that "[a]s a signatory to the lease . . . the Nation is a necessary party that cannot be joined because it enjoys tribal sovereign immunity." Id. We noted when balanc-

3121

ing the factors to determine whether the Nation was an indispensable party that the plaintiff

> may have a viable alternative forum in which to seek redress. Sovereign immunity does not apply in a suit brought by the United States. Moreover, recently, in EEOC v. Karuk Tribe Hous[ing] Auth[ority], 260 F.3d 1071, 1075 (9th Cir. 2001), we held that because no principle of law `differentiates a federal agency such as the EEOC from the United States itself,' tribal sovereign immunity does not apply in suits brought by the EEOC.

Id. at 1162-63. When the EEOC moved "[a]t the eleventh hour" to intervene, we denied the motion. We observed, however, "that nothing precludes Dawavendewa from refiling his suit in conjunction with the EEOC." Id. at 1163.

In June 2002, the EEOC brought the present action, alleging intertribal discrimination as in Dawavendewa I and Dawavendewa II. In February 2002, Peabody moved for summary judgment under Federal Rule of Civil Procedure 56 and for dismissal of the action under Federal Rules of Civil Procedure 12(b)(7) and 12(b)(1). Peabody neither admitted nor denied that it had discriminated against non-Navajo Native Americans in violation of Title VII. Instead, Peabody asserted that Rule 19 required dismissal because the Navajo Nation was a necessary and indispensable party. Peabody also asserted that the issue of the legality of this lease provision was a nonjusticiable political question, on the theory that because the DOI had approved the mining leases, the court would have to make an "initial policy choice" between the positions of the DOI and the EEOC.

The district court held that it was not feasible to join the Navajo Nation, and that the Nation was not only a necessary but also an indispensable party. In the alternative, it found the legality of the Navajo employment preference in the lease to

3122

be a nonjusticiable political question. The district court dismissed the entire action, including the EEOC's record-keeping claim. The EEOC timely appealed. We reverse and remand for further proceedings.

II. Discussion

A. Joining the Navajo Nation Under Rule 19

Rule 19 governs compulsory party joinder in federal district courts. The district court held that it was not feasible to join the Navajo Nation because, under Title VII, the EEOC cannot directly sue the Nation. See 42 U.S.C. § 2000e(b)(1) (exempting Indian tribes from the statutory definition of "employer"); see also Dawavendewa II, 276 F.3d at 1159 n.9 (observing that "pursuant to § 2000e(b), Indian tribes are specifically exempt from the requirements of Title VII"). Although the district court decided the issue on a motion for summary judgment, we construe the motion as one to dismiss for failure to join an indispensable party under Rule 12(b)(7). See Dredge Corp. v. Penny, 338 F.2d 456, 463-64 (9th Cir. 1964) (explaining that dismissal for failure to join a party must be decided on a motion to dismiss, not summary judgment). We review de novo the district court's legal conclusion that it is not feasible to join the Navajo Nation. United States v. Bowen, 172 F.3d 682, 688 (9th Cir. 1999) (explaining that although "[g]enerally, we review a district court's decision regarding joinder for abuse of discretion[,] .. . . we review legal conclusions underlying that decision de novo") (internal citation and quotation marks omitted).

We hold that the Navajo Nation is a necessary party under Rule 19. We hold, further, that where the EEOC asserts a cause of action against Peabody and seeks no affirmative relief against the Nation, joinder of the Nation under Rule 19 is not prevented by the fact that the EEOC cannot state a cause of action against it. Because the EEOC is an agency of the United States, the Nation cannot object to joinder based

3123

on sovereign immunity, as we noted in <u>Dawavendewa II</u>. 276 F.3d at 1162-63. We therefore hold that joinder of the Nation is feasible.

1. Rule 19

In relevant part, Rule 19(a) provides that

> [a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. . . . If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

Rule 19(b) provides that if it is not feasible for the court to join a person meeting the requirements of Rule 19(a), the court

> . . . shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court [in determining whether a party is indispensable] include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;

3124

second, the extent to which, by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Applying these two parts of Rule 19, there are three successive inquiries. Bowen, 172 F.3d at 688 (describing Rule 19's "three-step process"). First, the court must determine whether a nonparty should be joined under Rule 19(a). We and other courts use the term "necessary" to describe those "[p]ersons to [b]e [j]oined if[f]easible." Fed. R. Civ. P. 19(a); see also Disabled Rights Action Committee v. Las Vegas Events, Inc., 375 F.3d 861, 867 n.5 (9th Cir. 2004) (explaining that the term "necessary" is a "term[ ] of art in Rule 19 jurisprudence"); Bowen, 172 F.3d at 688. If understood in its ordinary sense, "necessary" is too strong a word, for it is still possible under Rule 19(b) for the case to proceed without the joinder of the so-called "necessary" absentee. In fact, Rule 19(a) "defines the persons whose joinder in the action is desirable" in the interests of just adjudication. Fed. R. Civ. P. 19 Advisory Committee Note (1966) (emphasis added); see also Bowen, 172 F.3d at 688. Absentees whom it is desirable to join under Rule 19(a) are "persons having an interest in the controversy, and who ought to be made parties, in order that the court may act[.]" Shields v. Barrow, 58 U.S. (17 How.) 130, 139 (1854).

If an absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined. Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction. See Fed. R. Civ. P. 19(a); see also Tick v.

3125

Cohen, 787 F.2d 1490, 1493 (11th Cir. 1986) (listing the three factors that may make joinder unfeasible).

Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an "indispensable party" such that the action must be dismissed. As the Advisory Committee Note explains, Rule 19 uses "the word `indispensable' only in a conclusory sense, that is, a person is `regarded as indispensable' when he cannot be made a party and, upon consideration of the factors [in Rule 19(b)], it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it." Fed. R. Civ. P. 19 Advisory Committee Note (1966). Indispensable parties under Rule 19(b) are "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." Shields, 58 U.S. at 139.

2. The Navajo Nation as a Necessary Party

The EEOC and Peabody agree, as they did in district court, that the Navajo Nation is a necessary party under Rule 19(a)(1) because the Nation is a party to the lease with Peabody. For the sake of clarity, we explain why we also agree. Rule 19(a) is "concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action. " Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir. 1983) (citing Advisory Committee's Note Fed. R. Civ. P. 19 (1966)). As in Dawavendewa II, 276 F.3d at 1156, the Nation is a signatory to lease provisions that the plaintiff challenges under Title VII. The EEOC seeks declaratory, injunctive, and monetary relief. If the EEOC is victorious in its suit against Peabody, monetary damages for the charging parties can be awarded without the Nation's participation. But declar-

3126

atory and injunctive relief could be incomplete unless the Nation is bound by res judicata. The judgment will not bind the Navajo Nation in the sense that it will directly order the Nation to perform, or refrain from performing, certain acts. But it will preclude the Nation from bringing a collateral challenge to the judgment. If the EEOC is victorious in this suit but the Nation has not been joined, the Nation could possibly initiate further action to enforce the employment preference against Peabody, even though that preference would have been held illegal in this litigation. Peabody would then be, like the defendant in Dawavendewa II, 276 F.3d at 1156, "between the proverbial rock and a hard place -- comply with the injunction prohibiting the hiring preference policy or comply with the lease requiring it." By similar logic, we have elsewhere found that tribes are necessary parties to actions that might have the result of directly undermining authority they would otherwise exercise. See Pit River Home v. United States, 30 F.3d 1088, 1092 (9th Cir. 1994) (Pit River Tribal Council was a necessary party in suit challenging its designation by the Secretary of Interior as the beneficiary of reservation property); Confederated Tribes of Chehalis Reservation v. Lujan, 928 F.2d 1496, 1497 (9th Cir. 1991) (Quinault Nation was a necessary party in suit challenging the United States' continued recognition of the Nation as sole governing authority of the Quinault Indian Reservation). Following these cases, we conclude that the Navajo nation is a necessary party under Rule 19(a).

3. Feasibility of Joinder

We turn next to the issue of whether it is feasible to join the Navajo Nation. Peabody does not contest that the court could exercise personal jurisdiction over the Nation. Rather, Peabody argues that the district court lacked jurisdiction because of the Nation's sovereign immunity.

In many cases in which we have found that an Indian tribe is an indispensable party, tribal sovereign immunity has

3127

required dismissal of the case. See, e.g., Dawavendewa II, 276 F.3d at 1163; American Greyhound Racing, Inc. v. Hull, 305 F.3d 1015, 1027 (9th Cir. 2002). By contrast, in a suit brought by the EEOC, the Nation's tribal sovereign immunity does not pose a bar to its joinder. Tribal sovereign immunity does not "act as a shield against the United States," even when Congress has not specifically abrogated tribal immunity. United States v. Yakima Tribal Court, 806 F.2d 853, 861 (9th Cir. 1986); United States v. Red Lake Band of Chippewa Indians, 827 F.2d 380, 382 (8th Cir. 1987). Because the EEOC is an agency of the United States, "tribal sovereign immunity does not apply in suits brought by the EEOC." Dawavendewa II, 276 F.3d at 1162-63; Karuk, 260 F.3d at 1075.

Peabody argues, however, that the district court lacked the authority to join the Nation because the EEOC cannot state a claim against an Indian tribe under Title VII. The parties agree that the EEOC cannot sue an Indian tribe under Title VII regarding the tribe's own employment practices. Under § 2000e(b), an Indian tribe is specifically exempt from the definition of "employer," and thus Title VII does not apply to Indian tribes when they act as employers. In addition, Title VII limits the EEOC's authority to proceed against "a respondent which is a government, governmental agency, or political subdivision." 42 U.S.C. § 2000e-5(f)(1). In the case of a governmental respondent, if the EEOC fails to resolve the matter by informal means, the EEOC "shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent. " Id.

However, a plaintiff's inability to state a direct cause of action against an absentee does not prevent the absentee's joinder under Rule 19. In Beverly Hills Federal Savings and Loan Association v. Webb, 406 F.2d 1275, 1279-80 (9th Cir. 1969), we stated that "a person may be joined as a party [under Rule 19(b)] for the sole purpose of making it possible to accord complete relief between those who are already parties, even though no present party asserts a grievance against

3128

such person." We held that a title company acting as a trustee for some of the defendants' property was properly named as a defendant "for the sole purpose of 'facilitating' the enforcement of any orders that might be made by the court with respect to the trust or the trust property." Id. at 1279 (emphasis added). We so held even though the plaintiff did not "assert any claim against the Title Company with respect to which [the district] court has subject matter jurisdiction." Webb, 406 F.2d at 1279 (emphasis added).

In National Wildlife Federation v. Espy, 45 F.3d 1337, 1344-45 (9th Cir. 1995), we held that private parties could be named as defendants along with federal agencies in a suit brought under the Administrative Procedure Act to enforce rights conferred by the National Environmental Policy Act and by the Food, Agriculture, Conservation and Trade Act of 1990. Although none of these statutes authorized causes of action against the private parties, we held that Rule 19 nonetheless authorized their joinder as defendants. Id. In so holding, we cited Sierra Club v. Hodel, 848 F.2d 1068, 1077 (10th Cir. 1988), in which the Tenth Circuit held that joinder of a county was proper in an action under the Administrative Procedure Act against a federal agency, even though the plaintiff could not sue the county directly.

Our circuit's reading of Rule 19 not to require a cause of action between a plaintiff and a party sought to be joined under the rule is consistent with Supreme Court precedent. In International Brotherhood of Teamsters v. United States, 431 U.S. 324, 356 (1977), the Supreme Court held that a labor union named as a defendant was not liable for any discrimination. Thus, the plaintiff had no viable cause of action against the union. Accordingly, the Court vacated a district court injunction against the union. Nevertheless, the Supreme Court wrote that "[t]he union will properly remain in this litigation as a defendant so that full relief may be awarded the victims of the employer's post-Act discrimination." Id. at 356 n.43 (citing Fed. R. Civ. P. 19(a); EEOC v. MacMillan Bloedel

3129

Containers, Inc., 503 F.2d 1086, 1095 (6th Cir. 1974)). The Supreme Court reaffirmed Teamsters' approach to Rule 19 in Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 400 & n.14 (1982) (reiterating the Supreme Court's holding in Teamsters, 431 U.S. at 356, n.43).

We recognize that the Fifth Circuit has stated that"it is implicit in Rule 19(a) itself that before a party . . . will be joined as a defendant the plaintiff must have a cause of action against it." Vieux Carre Prop. Owners v. Brown, 875 F.2d 453, 457 (5th Cir. 1989); see also Davenport v. Int'l Brother-hood of Teamsters, AFL-CIO, 166 F.3d 356, 366 (D.C. Cir. 1999) (quoting this statement from Vieux Carre ). However, our circuit has never agreed with the rule stated in Vieux Carre. Moreover, the actual holdings of Vieux Carre and Davenport (as distinct from their abstract statement of the rule) can be reconciled with the Supreme Court's and with our own Rule 19 cases. In Vieux Carre and Davenport, the courts were answering different questions from the question in this case. In Vieux Carre, the issue was whether the court could join under Rule 19 and then impose an injunction directly on a party against whom the plaintiff could not state a cause of action. The court held it could not. 875 F.2d at 456-57. In Davenport, the issue was the same as in Vieux Carre. 166 F.3d at 366. The D.C. Circuit held in Davenport , "[i]t is not enough that plaintiffs `need' an injunction against Northwest in order to obtain full relief. They must also have a right to such an injunction, and Rule 19 cannot provide such a right." Id.

The difference between the situation presented here, in which plaintiffs seek no affirmative relief against the Navajo Nation, and that in Vieux Carre and Davenport, in which plaintiffs sought injunctions against the party sought to be joined, is captured in the majority and concurring opinions in General Building Contractors Association v. Pennsylvania, 458 U.S. 375 (1982). In General Building, the Supreme Court held that injunctive relief to enforce Title VII rights could not

3130

be granted against employers who were "part[ies] found not to have violated any substantive rights of [the plaintiffs]." Id. at 399. The Court, however, also clarified that"[t]his is not to say that [the employer] defendants . . . might not, upon an appropriate evidentiary showing, be retained in the lawsuit and even [be] subject to such minor and ancillary provisions of an injunctive order as the District Court might find necessary to grant complete relief." Id. (citing Zipes, 455 U.S. at 399-400). In her concurrence, Justice O'Connor emphasized this point, observing that even though the Court in Teamsters v. United States, 431 U.S. 324 (1977), had found that the union had not violated Title VII, it had nonetheless"directed the union [under Rule 19] to remain in the litigation as a defendant so that full relief could be awarded the victims of the employer's post-Act discrimination." Id.  at 405 (O'Connor, J., concurring) (quoting Zipes, 455 U.S. at 399-400).

As in Teamsters, Espy, and Webb, the EEOC has no claim against the party it seeks to join and is not seeking any affirmative relief directly from that party. Joinder is necessary for the "sole purpose" of effecting complete relief between the parties, Webb, 406 F.2d at 1279-80, by ensuring that both Peabody and the Nation are bound to any judgment upholding or striking down the challenged lease provision. Because the EEOC is not seeking to hold the Navajo Nation liable under Title VII, we reject Peabody's argument that our reading of Rule 19 conflicts with the Rules Enabling Act's restriction that the federal rules of civil procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Joinder of the Nation does not, and cannot, create any substantive rights that the EEOC may enforce against the Nation, and the EEOC does not contend otherwise.

Our interpretation is consistent with other courts that have allowed the EEOC to join a party under Rule 19 against which it does not or cannot state a cause of action. In EEOC v. Unión Independiente de la Autoridad de Acueductos, 279

3131

F.3d 49, 52 (1st Cir. 2002), for example, the EEOC filed a complaint against a labor union for alleged discrimination against an employee. The First Circuit observed without disapproval that the EEOC had named a Puerto Rican governmental employer as a Rule 19 defendant "to ensure that complete relief, including [the employee's] reinstatement, was available." Id. Under Peabody's theory of Rule 19 and Title VII, the EEOC would not have had statutory authority to join a government as an employer because it could not sue that employer directly. See 42 U.S.C. § 2000e-5(f)(1) (granting authority to litigate against a government respondent to the Attorney General). In EEOC v. MacMillan Bloedel , the Sixth Circuit held that it was proper to join a union under Rule 19, although the union was not charged with a Title VII violation. 503 F.2d at 1088. The court so held "because the decree entered by the court might affect its collective bargaining agreement[.]" Id. at 1095. "As a practical matter," the Sixth Circuit observed, "the Union need not play a role in the litigation until the court finds that [the employer ] has violated Title VII." Id.; see also id. at 1096 (citing cases in which union was joined in order to participate in the remedy). We agree with the Sixth Circuit in MacMillan Bloedel that our understanding of Rule 19 is "consistent with Title VII's grant of broad equitable powers to the courts to eradicate the present and future effects of past discrimination." 503 F.2d at 1095-96. See also Gen. Tel. Co. v. EEOC, 446 U.S. 318, 333 (1980) (stating that Congress intended to give the EEOC "broad enforcement powers.").

Our interpretation of Rule 19 is also consistent with both the purpose and text of the rule. The Northern District of California provided a succinct statement of this purpose when it explained that "[b]y definition, parties to be joined under Rule 19 are those against whom no relief has formally been sought but who are so situated as a practical matter as to impair either the effectiveness of relief or their own or present parties' ability to protect their interests." Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship

3132

and Training Committee, 440 F. Supp. 506, 518 (N.D. Cal. 1977). The Nation fits this definition -- it is a party against which relief has not formally been sought but is so situated that effectiveness of relief for the present parties will be impaired if it is not joined. We hold that its joinder is feasible. See Fed. R. Civ. P. 19(a).

Finally, we note what we do, and do not, decide today. We do decide that the Navajo Nation is a necessary party that is feasible to join under Rule 19(a). However, we do not decide, even implicitly, the merits of the EEOC's Title VII suit against Peabody. That determination is for the district court on remand.

B. Political Question Doctrine

We next address the district court's ruling that the case involves a nonjusticiable political question. In Baker v. Carr, 369 U.S. 186 (1962), the Supreme Court identified six factors that may make a question nonjusticiable:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Id. at 217. See also Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 702 (9th Cir. 1992) (quoting the six Baker factors).

3133

The Baker factors must be interpreted in light of the purpose of the political question doctrine, which "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." Japan Whaling Association v. Am. Cetacean Society, 478 U.S. 221, 230 (1986).

The district court misunderstood the political question doctrine when it held that the third, fourth, and sixth Baker factors were implicated by the EEOC's claim. A nonjusticiable political question exists when, to resolve a dispute, the court must make a policy judgment of a legislative nature, rather than resolving the dispute through legal and factual analysis. See Koohi v. United States, 976 F.2d 1328, 1331 (9th Cir. 1992). While it is true that the EEOC is challenging a lease that the DOI has approved, the district court was not called upon to make an "initial policy determination." Resolving whether and how Title VII applies is a matter of statutory interpretation and thus involves simply implementing policy determinations Congress has already made. The issues here are entirely legal, and are of a sort "familiar to the courts." Eu, 979 F.2d at 702.

Nor do the fourth and fifth Baker factors apply merely because, at the behest of the EEOC, the district court was asked to rule on the legality of a lease that the DOI had approved. We regularly review the actions of federal agencies to determine whether they comport with applicable law. See Japan Whaling Ass'n, 478 U.S. at 230 (explaining that the political question doctrine did not bar a challenge to the Secretary of Commerce's action when a decision required "applying no more than the traditional rules of statutory construction, and then applying this analysis to the particular set of facts presented"). Nor do controversies between departments of the federal government necessarily present political questions. See, e.g., United States v. Nixon, 418 U.S. 683, 693 (1974) (dispute between the President and the Special Prose-

cutor); <u>United States v. ICC</u>, 337 U.S. 426, 430 (1949) (suit by the United States to review decision of the Interstate Commerce Commission); <u>TVA v. EPA</u>, 278 F.3d 1184, 1198 (11th Cir. 2002) (dispute between federal agencies about the meaning of the Clean Air Act). We therefore conclude that no part of this case presents a nonjusticiable political question.

C. Record-Keeping Claim

We turn finally to the EEOC's record-keeping claim. Title VII requires a covered employer to make and preserve records that are "relevant to the determinations of whether unlawful employment practices have been or are being committed." 42 U.S.C. § 2000e-8(c). In its complaint, the EEOC alleged that Peabody had failed to keep employment applications and sought an injunction directing Peabody to do so. Peabody has a record-keeping obligation under Title VII unrelated to the challenged Navajo employment preference. Although the district court did not explicitly discuss or analyze this claim, its entry of final judgment nonetheless effectively dismissed it.

Peabody's motion for summary judgment did not mention the record-keeping claim, and its motion to dismiss argued only that the EEOC was not entitled to a jury trial on the claim. In the absence of argument by the parties, fair notice to the EEOC that its record-keeping claim faced dismissal, or any justification offered by the district court for entering summary judgment on the claim, we vacate the judgment as to the EEOC's record-keeping claim and remand for further proceedings. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (the moving party "bears the initial responsibility of informing the district court of the basis for its motion"); <u>Couveau</u>, 218 F.3d at 1081 (observing that when the reasons for the district court's decision are not clear, we may vacate summary judgment and remand).

3135

Conclusion

We do not decide the merits of the EEOC's Title VII claim against Peabody today. We hold simply that the Navajo Nation is a necessary party to the action, and that it is feasible to join the Nation in order to effect complete relief between the parties. We also hold that the EEOC's suit does not present a non-justiciable political question. Finally, we reverse the district court's dismissal of the EEOC's record-keeping claim. We remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.