**SCI CA. FUNERAL SERVICES, INC.,**

v.

**WESTCHESTER FIRE INSURANCE COMPANY.**

No. CV 12–7436–GW(MANx).

United States District Court, C.D. California.

Jan. 28, 2013.

---

Joseph G. Balice, Ventura, CA, Robert M. Horkovich, New York, NY, for Plaintiffs.

Joseph A. Ziemianski, Houston, TX, Charles E. Wheeler, for Defendants.

### PROCEEDINGS: DEFENDANTS' MOTION TO DISMISS (filed 12/11/12)

GEORGE H. WU, District Judge.

*SCI Cal. Funeral Servs., Inc. v. Westchester Fire Ins. Co.*, Case No. CV–12–7436–GW(MANx) Tentative Ruling on Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(7)

### I. *Background*

SCI California Funeral Services, Inc. ("Plaintiff" or "SCI California") has filed suit against Westchester Fire Insurance Company ("Defendant" or "Westchester"), pleading three causes of action: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) declaratory relief. *See generally* Compl., Docket No. 1.[1]

Plaintiff's business concerns funereal and burial services. *See* Compl. ¶¶ 9, 12. Plaintiff entered into a written "commercial general liability insurance" agreement with nonparty Old Republic Insurance Company ("Old Republic"), which policy (the "Old Republic Policy") was allegedly effective from May 1, 2009 through May 1, 2010. *Id.* ¶ 6; Decl. of Joseph G. Balice ("Balice Decl."), Docket No. 22–1, Ex. B (Old Republic Policy). During that same time period, Plaintiff allegedly also was covered by a written "commercial excess liability insurance" policy issued by Defendant Westchester (the "Westchester Policy"). Compl. ¶ 7; Decl. of Charles Wheeler, Docket No. 10 ("Wheeler Decl."), Ex. 10 (Westchester Policy).[2] Importantly, Plaintiff alleges that the Old Republic Policy is a "fronting policy," subject to a $500,000 self-insured retention and a $4.5 million deductible "equal to the limits of the insurance."[3] Compl. ¶ 9. The Westchester Policy allegedly insures Plaintiff for the amount of loss that exceeds the amount payable pursuant to certain underlying policies, including the Old Republic Policy. *Id.* ¶ 10. For that reason, the Complaint alleges that the "attachment point for the [Westchester Policy] for any single occurrence ... covered by the [Old Republic Policy] is thus $5 million." *Id.*

A class action was filed in California state court against Plaintiff and related entities, *Sands v. Service Corporation, et al.*, Case

---

1. The Complaint indicates that the Court possesses subject matter jurisdiction over the matter by virtue of diversity jurisdiction. *See* Compl. ¶¶ 2, 4–5; 28 U.S.C. § 1332.

2. Plaintiff alleges that it paid all premium payments due on both policies. *Id.* ¶ 8.

3. A self-insured retention "refers to a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied before there is any coverage under the policy." Crosky, Heeseman, *et al., Cal. Practice Guide: Ins. Litig.,* (2012) § 7:384.

No. BC 421528 (the *"Sands* Litigation"), alleging (*inter alia*) that SCI California committed various negligent and intentional wrongful actions between 1985 and 2009 at the Eden Memorial Park Cemetery, located in Mission Hill, California, involving the "desecration, disruption and destruction of human remains" so as to "maximize [SCI California's] profits." *Id.* ¶¶ 1, 12.[4] In May 2012, the court certified three opt-out classes in the *Sands* Litigation, and the case is currently ongoing. *Id.* ¶ 12.

Plaintiff filed this lawsuit to recover from Defendant the costs Plaintiff has expended in defending the *Sands* Litigation, to which Plaintiff alleges it is entitled pursuant to the Westchester Policy. Defendant now moves to dismiss the case for failure to join an indispensable party, Old Republic, pursuant to Fed.R.Civ.P. 12(b)(7).

## II. *Legal Standard*

A party may bring a motion to dismiss for "failure to join a party under Rule 19." Fed.R.Civ.P. 12(b)(7). In turn, Rule 19 provides that a party "must be joined" if, in that party's absence, the court "cannot accord complete relief among existing parties." Fed.R.Civ.P. 19(a). Under Rule 19, courts undertake a three-step analysis to determine whether an absent party should be joined. *See E.E.O.C. v. Peabody W. Coal Co.,* 400 F.3d 774, 779 (9th Cir.2005). First, the court must determine whether the absent party is "necessary." *See Takeda v. Nw. Nat'l Life Ins. Co.,* 765 F.2d 815, 819 (9th Cir.1985). A party is "necessary" if,

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1). Second, if the absent party is a "necessary party under Rule 19(a)," the court must determine whether it is feasible to order that the absentee be joined. Fed.R.Civ.P. 19(b); *Peabody W. Coal Co.,* 400 F.3d at 779. Joinder is not feasible, for example, when venue is improper, when the absentee is not subject to personal jurisdiction, or when joinder would destroy subject matter jurisdiction. *Id.* Third, "if joinder is not feasible," the court must determine "whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Id.* In ruling on a motion brought pursuant to Rule 12(b)(7), "the court may consider matters outside the pleadings and weigh conflicting evidence." Schwarzer, Tashima, *et al., Cal. Practice Guide: Fed. Civ. P. Before Trial* (2011) § 7:125.

## III. *Analysis*

### A. *Further Background Concerning Concurrent Litigation*

A few months after Plaintiff filed the instant suit against Defendant Westchester (and one day after Westchester was served with the Complaint in this case), Westchester filed suit against Plaintiff, other related entities, Old Republic, and Doe insurers in Texas state court (the "Texas State Court Action"). *See* Wheeler Deck, Ex. 6 (Texas State Court Action complaint). In the Texas State Court Action, Defendant seeks declaratory relief concerning the same issues raised in this case, including (1) whether the Westchester policy "is not implicated until the limits of the Old Republic" policy is exhausted, and (2) whether Westchester is entitled to equitable subrogation from Old Republic. *See* Docket No. 9 at 4. Westchester notes that the *Sands* Litigation names certain Service Corporation International ("SCI") entities other than Plaintiff here (SCI California), most notably the parent corporation (*i.e.,* SCI), yet SCI

---

**4.** The operative complaint in the *Sands* Litigation is found as Exhibit 1 to the Declaration of

Charles Wheeler, Docket No. 10.

itself is not a party to this action. Docket No. 9 at 4. Thus, Westchester portrays the Texas State Court Action as more "comprehensive" than the instant matter, and characterizes this case as a "blatant effort to forum shop" on the part of Plaintiff. *Id.* at 3. In addition, Westchester avers that SCI, Plaintiff's parent corporation, is a Texas-based corporation and is the "first named insured" on the Westchester policy that forms the basis of the two actions. Docket No. 9 at 3. Also, Westchester claims that only SCI, the parent corporation of Plaintiff SCI California, has incurred costs in defending the Sands Litigation. *See* Docket No. 30 at 1. Plaintiff, though, rejoins that this:

> coverage dispute is about whether Westchester is responsible for defense costs incurred in California [since California is the forum for the *Sands* Litigation], by a California policyholder [Plaintiff here], defending a California class action lawsuit alleging claims under California law arising from the operation of a California cemetery. Every material aspect of this coverage dispute is connected to California, where this action was filed. And yet, Westchester elected to file a second duplicative lawsuit in another forum.

Docket No. 22 at 2–3. While Westchester's motion to dismiss is formally brought only on the basis that Old Republic is an indispensable party, the existence and nature of the Texas State Court Action is also clearly relevant as to how this action should move forward. The Court would discuss with the parties how these two cases should be handled so as to conserve judicial (and the parties') resources, and so as to avoid inconsistent rulings. That said, the motion currently before the Court raises a narrower question: whether Old Republic is a necessary and/or indispensable party to this litigation.[5]

**B. The Court Would Find that Old Republic is Not a Necessary Party Pursuant to Rule 19(a).**

Defendant first argues that Old Republic is a necessary party pursuant to Fed. R.Civ.P. 19(a)(1)(B)(ii), which provides that an absent party is necessary if resolving the litigation in its absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Courts have held that primary insurers are indispensable parties in litigation between excess insurance providers and policy holders. *See, e.g., Shell Oil Co. v. Aetna Cas. & Sur. Co.,* 158 F.R.D. 395, 402 (N.D.Ill.1994) ("a missing insurer that underlies or shares layers with the named defendants is indispensable because the named defendants' potential liability is dependent on a determination of a number of coverage, and policy limits issues.").[6] In other words, a primary insurer is indispensable because before the obligations of an excess insurer can be litigated, it must be determined whether a primary insurer's obligations have been exhausted, and for that reason the primary insurer's own obligations will form part of the subject of the litigation between the excess insurer and the insured, and the primary insurer must be a party to the suit to avoid inconsistent rulings and to defend its interests. *See City of Littleton, Colo. v. Commercial Union Assurance Cos.,* 133 F.R.D. 159, 163 (D.Colo.1990) ("the finality of any judgment as to the excess insurers' liability would be entirely contingent on judgment in a necessary, parallel state court suit between the plaintiffs and the absent [primary] insurers."). Westchester portrays itself as excess insurance, and Old Republic as analogous to a primary insurer, since Westchester argues its policy obligations are not triggered until underlying coverage, including Old Republic's, is exhausted. Further, Westchester argues that

---

5. Westchester states in passing that the Court should also determine at this point whether "this action should be dismissed or stayed in favor of the more comprehensive Texas lawsuit to promote judicial economy" (Docket No. 9 at 7), but has not moved for a stay.

6. *Shell Oil* continued: "absent a ruling as to the omitted [primary] carriers' underlying policies, there can be no meaningful declaratory judgment as to the obligations of the named excess carriers whose policies kick in only upon exhaustion of the underlying coverage. Therefore, the most that Shell would gain in this action would be an advisory opinion." 158 F.R.D. at 402.

Old Republic must be party to this suit because the amount of coverage provided under the Old Republic Policy is in dispute; while the Complaint in this action alleges it is capped at $5 million, Westchester avers that (for various reasons) the Old Republic Policy limit is not exhausted until the $10 million commercial general liability limit and $10 million errors and omissions aggregate limit is reached. *See* Docket No. 9 at 6; Wheeler Decl., Ex. 8 (correspondence between the parties where Plaintiff appears to indicate that an amount other than $5 million might be due under the Old Republic Policy). In sum, while Westchester concedes that a fronting insurance is in some respects different than a primary insurance policy, it contends that the same logic underlying *Littleton* and *Shell Oil* applies to the instant matter: given that litigation of Westchester's obligations will necessarily turn on interpreting the Old Republic Policy as a threshold issue, Defendant argues that Old Republic is a necessary party here.

Plaintiff, though, rejects Westchester's analogy between a fronting insurance policy and a primary insurer. *See* Docket No. 22 at 10–14. Plaintiff portrays Old Republic as a "mere bystander to this dispute" because a fronting insurance policy, argues Plaintiff, is a form of self-insurance, where (in stark contrast to a primary insurer scenario) no risk is transferred from the insured to the insurer whatsoever. *Id.* at 12. To ascertain whether this argument has merit, the Court must first examine more closely the nature of a fronting policy. One leading treatise explains such contracts as follows:

> Insurers sometimes issue policies that do not transfer the risk of loss from the policyholder to the insurer; e.g., where the policyholder or an affiliate (or a subsidiary "captive insurer") agrees to indemnify the insurer for any loss paid by the insurer. This is often referred to as a non-risk transfer or "fronting" arrangement.... Large companies may use "fronting" policies to comply with statutory filing requirements, or for business purposes such as leasing property or equipment owned by others under a lease requiring the lessee to provide insurance coverage. The "fronting" policy satisfies such insurance requirements because the insurance company is responsible in the first instance to pay a loss covered by its policy. The arrangement also satisfies the policyholder's interest in retaining the risk (and minimizing the cost of insurance) because the insurer expects to be indemnified for any loss that the insurer may be required to pay, and has rated the policy accordingly.

> There is usually no transfer of policyholder risk because the coverage available under a "fronting" policy is the same as the deductible. But there may be situations in which the insurer finds itself at risk; e.g., where a judgment on a covered claim is rendered against an insured who is in bankruptcy.

Crosky, Heeseman, *et al. Cal. Practice Guide: Ins. Litig.* (2012) §§ 1:53.10–11,-7.392.1. In other words, Plaintiff concedes that "adjudication of this action will necessitate an evaluation and interpretation of the Old Republic Policy," but contends that Old Republic is nonetheless *not* a necessary party because the Old Republic Policy designates any financial burden "allocated to the Old Republic Policy layer" as "Plaintiff's to bear." Docket No. 22 at 12. While there is little caselaw addressing the nature of fronting insurance policies, Plaintiff seeks to analogize to other instances where courts have found that an excess insurer and the insured can litigate coverage without the joinder of the underlying insurer. For instance, in *Intel Corp. v. Am. Guar. & Liab. Ins. Co.*, No. CV 09–299 JF (PVT), 2009 WL 1653014, at *8, 2009 U.S. Dist. LEXIS 49330, at *22–23 (N.D. Cal. June 11, 2009), the court held that a primary insurer was not an indispensable party as to the litigation between an excess insurer and the insured, because the primary insurer had already settled with the insured such that they agreed the policy limits of the primary insurance policy "had been reached" and also the insured had released the primary insurer from "all claims" relating to the incident in question. While *Intel* involved a settlement where the insured released the primary insurer from all claims, unlike the instant case, Plaintiff argues that in substance a similar situation arises here, as the very nature of a fronting policy renders Old

Republic "immune from liability," as Plaintiff has assumed all of the risk "through the self-insured retentions, deductibles and indemnity agreement" involved in the fronting arrangement. Docket No. 22 at 12–13.

There is scant caselaw to guide the Court's analysis, as few courts have considered the import of a fronting policy in this procedural context. However, both parties cite to *Witco Corp. v. Travelers Indem. Co.*, No. CV 93-4709, 1994 WL 706076, at *3–4, 1994 U.S. Dist. LEXIS 20781, at *12–14 (D.N.J. Apr. 6, 1994), where the court held that a fronting insurer was indeed an indispensable party to the litigation between an excess insurer and the insured, simply analogizing to the primary/excess insurer relationship. Defendant cites this almost thirty-year old case applying New Jersey law since it appears to be the only directly on-point authority, and *Witco*'s holding indeed militates in Defendant's favor. However, Plaintiff notes that the reasoning underpinning the *Witco* court's determination that the fronting insurer was an indispensable policy does not necessarily apply to the instant matter. The *Witco* court first noted that "[t]he inquiry into whether additional parties are necessary is one that must be based heavily on the facts of each individual case," and resisted any brightline rule as to whether certain types of insurers are indispensable parties to litigation between the insured and other insurers. *Id.* at *3–4, 1994 U.S. Dist. LEXIS 20781, at *12 (citation omitted). Then, the court stated:

> First, plaintiff attempts to argue that [fronting insurer] National is not a necessary party because the [fronting] policy [National] issued Witco was essentially a sham policy, designed to aid Witco in obtaining excess liability coverage [from the named defendant insurer] ... Plaintiff will not be permitted to benefit at the expense of a third party from a *sham transaction,* arranged for plaintiff's own convenience, *designed to induce the excess insurer to rely on plaintiff's misrepresentations and provide coverage based on that reliance,* particularly where this Court has not been provided with the opportunity to examine

the document upon which plaintiffs opposition to the motion is based.

*Id.* at *3–4, 1994 U.S. Dist. LEXIS 20781, at *13. As Plaintiff notes, *Witco* is thus distinguishable on its facts, as there the court found that the defendant excess insurer had been misled as to the nature of the fronting policy, and further, the court there "did not accept the legitimacy of the fronting arrangement." Docket No. 22 at 13. Here, in contrast, Westchester knowingly agreed to provide excess coverage to the Old Republic Policy, the terms of which Westchester was aware. Moreover, while *Witco* applied New Jersey substantive law, which was possibly (though it is unclear) the source of the court's disapproval of fronting policies as "sham" transactions in that case, under California law, fronting policies are entirely legal and do not, in and of themselves, raise any eyebrows. *See Catholic Mut. Relief Soc'y v. Super. Ct.,* 42 Cal.4th 358, 64 Cal.Rptr.3d 434, 445 n. 9, 165 P.3d 154 (2007) (" 'In a fronting arrangement—*a well-established and perfectly legal scheme*—policies are issued by a state licensed insurance company and then immediately reinsured 100% of their face value by the out-of-state unlicensed insurer.' ") (emphasis added) (quoting *Reliance Ins. Co. v. Shriver, Inc.,* 224 F.3d 641, 643 (7th Cir.2000)). Indeed, at least one California court has held that a fronting policy is a (legal) form of *self*-insurance, and is *not insurance* for purposes of determining equitable contribution amounts amongst insurers. *Aerojet–Gen. Corp. v. Transport Indem. Co.,* 17 Cal.4th 38, 70–72, 70 Cal.Rptr.2d 118, 948 P.2d 909 (1997) ("The 'fronting' policies created rights and duties between [the insured] and [the fronting insurer]. They did not even purport to create any right or duty in either [the insured] or [the fronting insurer] as against the world, including the other insurers.").[7] Therefore, the Court does not find *Witco* very persuasive authority as to whether Old Republic is a necessary party here.

To summarize the legal landscape of the argument, then, the Court must determine

---

7. The factual background *of Aerojet,* though, is distinct from the instant matter, as the defendant insurers in that case were primary, not excess

insurers. 17 Cal.4th at 72 n. 21, 70 Cal.Rptr.2d 118, 948 P.2d 909.

whether the fronting insurance policy at issue here is analogous to the primary insurance policies involved in *Littleton* and *Shell Oil,* or instead is on all fours with the policy considered in *Intel,* where the insured had already released the insurer from all claims under the policy and had contractually bound itself to the position that the policy limits were exhausted. The key determination, then, is whether or not Old Republic bears the risk of payment for the costs insured by the Old Republic Policy. If Plaintiff does, then it stands to reason that Old Republic is not a necessary party to this litigation, as the Court must determine the amount due pursuant to the Old Republic Policy but *Plaintiff alone* will shoulder that financial burden, after which point the Westchester policy will be triggered. If, on the other hand, Plaintiff will turn to Old Republic to pay whatever amount the Court determines is due under the Old Republic Policy, then Old Republic, it would seem, is a necessary party here. The matter presents a close question. However, the Court should find that Plaintiff has the better of the argument. Crucially, in addition to the Old Republic Policy, Plaintiff and Old Republic had also entered into a separate written agreement, dubbed the "Program Agreement." *See* Balice Deck, Ex. C (Program Agreement). That contract included, as summarized by Plaintiff, "a provision requiring Plaintiff to indemnify and hold Old Republic harmless from all claims, loss, costs, and expenses that Old Republic might incur under the Program Agreement or the [fronting] Policy." Docket No. 22 at 5; Balice Deck, Ex. C ¶ 7.1. In other words, Old Republic may recoup from Plaintiff any outlays it is forced to expend pursuant to the terms of the Old Republic Policy.

Defendant struggles to explain why this arrangement is distinguishable from that presented in *Intel,* described above, given that it appears the Program Agreement renders Old Republic absolved of any risk arising out of the Old Republic Policy. Defendant does, though, point to two ways in which some degree of risk has in fact been transferred to Old Republic, notwithstanding the Program Agreement. First, Defendant notes that Old Republic is still on the hook for any claims that arise out of *Old Repub-* *lic's* negligence or willful misconduct. Balice Deck, Ex. C ¶ 7.1. Second, Old Republic is still obligated to pay amounts due under the fronting policy if Plaintiff becomes insolvent or bankrupt. *See* Wheeler Deck, Ex. 7 at 51 (Old Republic Policy stating that "Bankruptcy or insolvency of the insured ... will not relieve us of our obligations under this Coverage Part"). The Court would find, though, that these are but small chinks in the otherwise impenetrable armor provided to Old Republic by virtue of the Program Agreement and the Old Republic Policy's fronting nature more generally. Indeed, Defendant even concedes in reply briefing that for any amount expended by Old Republic under its policy, Old Republic may then seek reimbursement from Plaintiff. Docket No. 30 at 6. Therefore, the Court would find that Old Republic is not a necessary party to this action, because whatever amount the Court might assess was due pursuant to the Old Republic Policy will in fact be paid by Plaintiff. *See Intel,* 2009 WL 1653014, at *8, 2009 U.S. Dist. LEXIS 49330, at *23 (finding that the primary insurer was not an indispensable party to the litigation between the excess insurer and the insured because "the Court will be able to determine-without prejudice to [the absent insurer]-that the [primary policy limit] has been reached based upon the settlement payments [and release of all further claims] and the expenditures paid by [the insured].").

In sum, then the Court would find that Old Republic is not a necessary party pursuant to Fed.R.Civ.P. 19(a). While so holding renders it unnecessary for the Court to determine whether Old Republic could feasibly be joined pursuant to Rule 19(b), the substance of that analysis is substantially similar to the above discussion in any event, as Defendant readily admits. Docket No. 9 at 14; Fed. Civ. P. 19(b) (factors court must consider when determining whether a party is indispensable include, *inter alia,* "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties," and "whether a judgment rendered in the person's absence would be adequate."). Thus, altogether, the Court would find that Old Republic is not a neces-

sary party to this action, and thus the Court would DENY Defendant's motion to dismiss the suit pursuant to Fed.R.Civ.P. 12(b)(7).

### C. Further Considerations

Two further wrinkles arise, however. First, the parties are in agreement that joinder of Old Republic, would, in fact, be feasible, as it would not destroy diversity or have any other similar result preventing the Court from properly hearing the suit. Thus, Plaintiff suggests, it appears correctly, that Defendant is free to file a cross-claim against Old Republic pursuant to Fed.R.Civ.P. 13. *See* Schwarzer, Tashima, *et al.*, *Cal. Practice Guide: Fed. Civ. P. Before Trial* (2011) § 9:164 ("As a practical matter, defendant will file [a 12(b)(7) ] motion only if the joinder will result in dismissal. Otherwise, the parties' presence could be achieved through defendant's own claims (e.g., impleader or cross-claim)."). In any event, the fact that joinder is feasible here is still further reason the motion to dismiss should be denied, in addition to the Court's finding that Old Republic is not in fact a necessary party. *Id.* § 9:161 ("a motion to dismiss will be denied where the absent party (whether necessary or indispensable) is subject to service of summons, and his or her joinder would not deprive the court of subject matter jurisdiction. The motion to dismiss will be treated as a motion to compel joinder of the absent party and plaintiff will be granted leave to add the party to his or her action.").

Second, and more importantly, the Court cannot ignore the pending Texas State Court Action, which involves the exact same claims, facts and legal issues raised in this action. To reiterate, neither party has moved for a stay of this action. However, in reply briefing, Defendant sets forth a purported factual and procedural basis for a stay, namely that permitting both actions to move forward would result in piecemeal litigation:

> [Plaintiff] SCI California would (1) have this Court determine what obligation, if any, Westchester has to reimburse defense costs and then (2) have the Texas court

decide what defense obligation is owed by Old Republic and multiple John Doe insurers to whom all of the SCI entities have tendered the defense.

Docket No. 30 at 8. There is some logic to this argument; clearly, the two cases concern the exact same dispute. However, the Court would not ignore the fact that it was in fact Westchester, not Plaintiff, that instituted the duplicative Texas State Court Action, and it indisputably did so after it was already well aware of Plaintiff's suit here. Westchester has not presented any reason why it did not instead file counterclaims and cross-claims as necessary in this suit such that it would be as comprehensive as the Texas State Court Action. (Such reasons, including personal and subject matter jurisdiction concerns, may exist, but Westchester has not brought them to the Court's attention.) Indeed, while Westchester accuses Plaintiff of forumshopping in selecting a California federal court, Plaintiff rejoins that Defendant is attempting to "hijack this dispute" in an "attempt to circumvent having a California court properly adjudicate the parties' rights and responsibilities under applicable California law, including the California Supreme Court's recent decision in *State of Cal. v. Continental Ins. Co.*, 55 Cal.4th 186, 145 Cal.Rptr.3d 1, 281 P.3d 1000 (2012), which is dispositive of many of the issues in this case." Docket No. 22 at 2. In some senses, then, both parties are attempting to forumshop; Plaintiff filed suit here at least in part because of what it views as favorable California law, whereas Defendant seeks to apply Texas law to the dispute.[8] In any event, the Court would find that Plaintiff's suit was the first filed, and does not warrant dismissal due to its failure to join Old Republic (or any other reason yet identified by Defendant).

Whether the parties can either reach a stipulation that would avoid the continuation of these two parallel cases, or, of course, a global settlement agreement as amongst all of the insurers involved in both suits, is up to the parties. However, the Court would emphasize that it does not construe either party

---

**8.** Neither party discusses whether any of the policies at issue here contain a choice of law provision.

to have yet moved to stay this case, though either party remains free to file such a motion. Indeed, many of the decisions cited by both parties here involved motions to stay motions brought alongside motions to dismiss pursuant to Rule 12(b)(7). *See, e.g., Littleton,* 133 F.R.D. at 164–65; *Intel Corp.,* 2009 WL 1653014, at *8–9, 2009 U.S. Dist. LEXIS 49330, at *23–24; *Witco Corp.,* 1994 WL 706076, at *8, 1994 U.S. Dist. LEXIS 20781, at *26–27. Thus, while the Court is uneasy at the prospect of these two suits proceeding simultaneously, the solution proposed by Defendant, *i.e.,* finding that Old Republic is an indispensable party such that dismissal of this suit is warranted, is unavailing. Until such time as either party moves to propose a different solution, then, the Court would find that the case should proceed unhindered.

## IV. *Conclusion*

For the above reasons, the Court would DENY Defendant's 12(b)(7) motion in its entirety.